UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ERICK VALLE-IGLESIAS,

                Petitioner,

      -against-

UNITED STATES OF AMERICA,

                Respondent.
----------------------------------------------------------- X
FEUERSTEIN, J.

**OPINION & ORDER**
CV-10-3223

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E D N Y
★ JUN 07 2013 ★
LONG ISLAND OFFICE

On July 12, 2010, *pro se* petitioner Erick Valle-Iglesias ("petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, challenging his sentence, upon his plea of guilty to one (1) count of illegally reentering the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(1), to a term of imprisonment of thirty (30) months to be followed by a period of supervised release for three (3) years. For the reasons set forth below, the petition is denied.

I.     Background

On January 31, 2007, a grand jury handed up a one (1)-count indictment charging petitioner with illegally reentering the United States in violation of 8 U.S.C. §§ 1326(a) and (b)(1).

In May 2007, pursuant to an order of the Honorable A. Kathleen Tomlinson, United States Magistrate Judge, Dr. William J. Ryan conducted a psychological assessment of petitioner to determine his competency to stand trial. Dr. Ryan diagnosed petitioner with malingering, polysubstance dependence and personality disorder NOS with antisocial personality features, as well as a history of depressive disorder, but found that he "possess[es] a rational and factual understanding of the proceedings against him, does have the capacity to assist legal counsel in his

1

defense, and * * * can rationally make decisions regarding legal strategy" and, thus, was competent to stand trial.

During court proceedings on July 10 or 11, 2007, counsel appearing on behalf of petitioner at the conference requested that a second psychological evaluation be conducted of petitioner on the basis that both she and Randy Chavis ("Ms. Chavis" or "trial counsel"), petitioner's trial counsel, had "some serious concerns" about petitioner. (Transcript of July 11, 2007 proceedings ["July T."], at 2-3). The government did not object. (July T., at 2). Counsel indicated that they would consult with each other to arrange for the evaluation, (July T., at 2), and were directed to submit a proposed order regarding the second psychological evaluation. (Doc. No. 18). No representations were made during the conference about who would bear the cost of the second psychological evaluation, see July T.), and counsel never submitted a proposed order directing the second psychological evaluation.

On January 3, 2008, petitioner signed a plea agreement containing, *inter alia*, the following waiver:

> "[Petitioner] agrees not to file an appeal or otherwise challenge by petition pursuant to 28 U.S.C. § 2255 or any other provision the conviction or sentence in the event that the Court imposes a term of imprisonment of 30 months or below. This waiver is binding without regard to the sentencing analysis used by the Court."

On that same date, petitioner withdrew his plea of not guilty and entered a plea of guilty to the sole count in the indictment. During the plea allocution, petitioner indicated, *inter alia*, that he attended school until the twelfth grade; that he received his GED while incarcerated at the Nassau County Correctional Center ("NCCC"); that he speaks both English and Spanish fluently, but is more

---

[1] The Court docket indicates that the proceedings were held on July 10, 2007, but the transcript of the proceedings is dated July 11, 2007.

2

comfortable with English; that he understands English and is able to communicate in English; that he was under the care of a psychiatrist at the NCCC "for some mental disorders [he] suffer[s] from on a daily basis;" that he takes medication, specifically Paxil, Seroquel and Remeron, for sleeping, insomnia, depression, multiple personality disorder and posttraumatic stress disorder; that he did not recall taking any other type of medication within twenty-four (24) hours prior to the plea allocution; that he did not consume any alcoholic beverages; that he went over the plea agreement with his trial counsel and signed it; that he was pleading guilty voluntarily and of his own free will; and that no one had threatened, forced or coerced him into pleading guilty, or had promised him anything to encourage him to plead guilty other than what is contained in the plea agreement. (Plea at 3-7, 14-16). Trial counsel indicated, *inter alia*, that she was able to communicate with petitioner in English and had no question as to his ability to proceed with the proceedings in English. (Plea at 4). Petitioner was asked the following questions and gave the following responses:

> THE COURT: * * * Do any of those [medications that petitioner takes] interfere with your ability to think?
>
> THE [PETITIONER]: Not at all. Actually, they help me cope with daily activities.
>
> THE COURT: My inquiry this morning is to make certain that you are capable mentally of understanding what you're doing by entering a plea of guilty. So my question is, do any of the medications that you take impair your ability to think clearly?
>
> THE [PETITIONER]: Not at the moment they don't. I understand clearly what you're explaining to me, and I'm aware of the charges I'm being accused of.
>
> * * *
>
> THE COURT: Do you fell that your mind is clear as you stand here today?
>
> THE [PETITIONER]: I feel it is.
>
> * * *

THE COURT: * * * Are you satisfied * * * with the representation you received thus far from Ms. Chavis?

THE [PETITIONER]: Yeah, she's been very helpful. And, you know, I give her an A for effort. She does what she's supposed to do.

THE COURT: She's an excellent attorney.

THE [PETITIONER]: Yes, she is. She's very good.

THE COURT: Do you feel you need additional time to discuss with Ms. Chavis the entry of a guilty plea?

THE [PETITIONER]: You know, we spent a lot of time on the phone speaking about it.

THE COURT: My question is, are you comfortable with the process at this point; or do you feel you need additional time to discuss entering a guilty plea?

THE [PETITIONER]: I'm comfortable now.

THE COURT: No additional time is necessary?

THE [PETITIONER]: I've had plenty of time to think about it. Thank you.

THE COURT: You said previously that you understand the charges [sic] in the indictment against you.

THE [PETITIONER]: That's correct.

THE COURT: And you've gone over it with Ms. Chavis.

THE [PETITIONER]: Yes, your Honor.

THE COURT: I'm going to ask the government to outline the indictment, ever so briefly.

MR. DURHAM: Your Honor, this is a single count indictment charging illegal reentry. The [petitioner] reentered the United States after being deported following a conviction of a felony, and he did not receive permission of the Secretary of Homeland Security before doing so.

THE COURT: Understood, sir?

THE [PETITIONER]: Yes.

THE COURT: Now, you understand that you have a right to continue your plea of not guilty and proceed to a trial in this case?

THE [PETITIONER]: I understand that right.

THE COURT: Do you understand that by pleading guilty you will be giving up your right to a trial and some other very valuable rights that go along with the trial?

THE [PETITIONER]: That's correct.

THE COURT: I'm going to go through those rights with you, because I have to be certain that you do understand those rights that you're giving up. At any trial you would be presumed to be innocent, and you would not have to prove that you were innocent. Do you understand that?

THE [PETITIONER]: That's correct.

THE COURT: Do you understand that under our system of law, the burden would be entirely upon the government to prove you guilty beyond a reasonable doubt?

THE [PETITIONER]: Yes, your Honor.

THE COURT: And that if the government failed to meet the burden of proof, a jury would have to find you not guilty?

THE [PETITIONER]: That's correct.

THE COURT: Do you also understand that you are giving up that right by pleading guilty at this time?

THE [PETITIONER]: I understand that.

THE COURT: Do you further understand that by continuing your plea of not guilty, you would be entitled, under the Constitution, to a speedy trial?

THE [PETITIONER]: That's correct.

THE COURT: And a public trial?

THE [PETITIONER]: Yes, your Honor.

THE COURT: Before a jury?

THE [PETITIONER]: That's correct.

THE COURT: And with the assistance of your attorney?

THE [PETITIONER]: Yes.

THE COURT: And do you understand that you are giving up, by pleading guilty, your right to a trial which is speedy and public with the assistance of counsel and before a jury?

THE [PETITIONER]: Yes, that's correct.

THE COURT: Do you further understand that at any trial where the government would, as I told you, have the burden of proving you guilty beyond a reasonable doubt, they would be required to bring in any witnesses to testify in your presence?

THE [PETITIONER]: That's correct.

THE COURT: And that your attorney would have the opportunity to cross-examine or question those witnesses?

THE [PETITIONER]: Yes.

THE COURT: And do you understand that you are giving up that right as well by pleading guilty?

THE [PETITIONER]: That's correct.

THE COURT: And do you further understand that at any trial Ms. Chavis would have the opportunity, if she thought it appropriate to do so, to bring in any evidence in your behalf?

THE [PETITIONER]: Yes, your Honor.

THE COURT: But you would be under no obligation to put in a case at all because of your presumption of innocence?

THE [PETITIONER]: That's correct.

THE COURT: Do you also understand that Ms. Chavis could raise objections to any evidence brought in by the government?

THE [PETITIONER]: Yes, your Honor.

THE COURT: And you're giving up that right as well by pleading guilty?

THE [PETITIONER]: That's right.

> THE COURT: Do you further understand that at any trial you would have the opportunity to testify in your own behalf if you chose to do so?
>
> THE [PETITIONER]: That's correct.
>
> THE COURT: You would be under no obligation to do so, because you have an absolute right against self-incrimination.
>
> THE [PETITIONER]: Yes, that's correct.
>
> THE COURT: Do you understand you're giving up that right by pleading guilty?
>
> THE [PETITIONER]: Yes, I understand.
>
> THE COURT: Indeed, in a few moments, I'll be asking you what you did that makes you guilty. And, therefore, you are giving up that right not to incriminate yourself.
>
> THE [PETITIONER]: Okay.
>
> THE COURT: Do you understand?
>
> THE [PETITIONER]: Yes. That's the Fifth Amendment.
>
> THE COURT: So do you understand all of the rights that I just told you about that you will be giving up by pleading guilty?
>
> THE [PETITIONER]: That's correct.
>
> THE COURT: You understand there will be no trial, or any of the rights that go along with it, and the only thing that you will be able to appeal is the sentence if you feel that I have imposed it illegally?
>
> THE [PETITIONER]: Yes, your Honor.
>
> THE COURT: You will not be able to challenge anything else underlying the conviction; is that understood?
>
> THE [PETITIONER]: That's correct.
>
> THE COURT: So, sir, are you willing, at this point, to give up your right to a trial and all of the other rights that I have just discussed with you?
>
> THE [PETITIONER]: Yes, that's correct.

(Plea at 5-7). After the government summarized the plea agreement, (Plea at 13-14), petitioner

7

indicated that he had no questions about the plea agreement; that he "understood everything [the Assistant United States Attorney] said[;]" that his understanding of the plea agreement was the same as what the government had said; and that he understood the plea agreement "completely." (Plea at 14-15).

In addition, trial counsel was asked the following questions and gave the following responses at the plea allocution:

> THE COURT: Ms. Chavis, do you have any questions as to your client's competency to proceed this morning?
>
> MS. CHAVIS: No, your Honor.
>
> THE COURT: And have you discussed the question of a guilty plea with him?
>
> MS. CHAVIS: I have discussed the question of a guilty plea with him quite thoroughly on many occasions.
>
> THE COURT: In your view, does he understand the rights he would be waiving by pleading guilty?
>
> MS. CHAVIS: Yes, your Honor.

(Plea at 7). Based upon petitioner's and trial counsel's statements during the plea allocution, as well as petitioner's demeanor and behavior in the courtroom, I was "satisfied that [petitioner] [was] entering th[e] plea of guilty voluntarily, of [his] own free will and that there [was] a factual basis for the plea." (Plea at 19).

On April 10, 2008, petitioner was sentenced to a term of imprisonment of ninety-six (96) months, to be followed by a period of supervised release for three (3) years. Prior to the sentencing, petitioner had moved to relieve Ms. Chavis as counsel and to withdraw his guilty plea. During the sentencing proceedings, Ms. Chavis indicated that petitioner had told her that he planned to withdraw those motions. (S1. at 16-17). When petitioner was asked if that was correct, he

responded: "Yes, that is correct." (S1. at 17). Petitioner also affirmatively indicated, under oath, that he "would like to withdraw those motions" and that he was satisfied with the representation he had received from Ms. Chavis. (S1. at 29).

A judgment of conviction was entered on April 17, 2008. On February 24, 2009, the United States Court of Appeals for the Second Circuit vacated the judgment of conviction and remanded the case to this Court for resentencing. On March 13, 2009, an amended judgment was entered upon petitioner's re-sentencing to a term of imprisonment of thirty (30) months, to be followed by a period of supervised release for three (3) years.

On July 12, 2010, petitioner filed the instant petition pursuant to 28 U.S.C. § 2255 seeking to vacate or reduce his sentence based upon the ineffectiveness of his trial counsel during his pretrial conferences. Specifically, petitioner alleges that his trial counsel was ineffective for failing to arrange for the second psychiatric evaluation allowed by the Court.[2] According to petitioner, "his plea of guilty was flawed and was not entered voluntarily because without this second evaluation being done there was no way to be sure that [he] understood what a plea agreement was." (Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ["Mot."], at p. 1). Petitioner seeks to have his guilty plea and thirty (30)-month sentence vacated and to have a second competency evaluation performed.

By mandate dated May 2, 2011, the United States Court of Appeals for the Second Circuit granted the government's motion to dismiss petitioner's appeal of the amended judgment and dismissed the appeal on the basis that petitioner had not demonstrated that the waiver of his

---

[2] Petitioner did not raise the failure to arrange a second psychiatric examination as a basis for seeking to relieve Ms. Chavis as his counsel in the March 27, 2008 application he subsequently withdrew at his first sentencing, nor did he raise such a claim on either of his two (2) appeals.

appellate rights in the plea agreement was unenforceable.

II.    Discussion

   A.    Legal Standard

A prisoner in custody under sentence of a federal court may move pursuant to 28 U.S.C. § 2255 to "vacate, set aside or correct" a sentence, *inter alia*, "imposed in violation of the Constitution or the laws of the United States." 28 U.S.C. § 2255(a).

   B.    Waiver

The government's contention that the entire Section 2255 petition is procedurally barred by the waiver of the right to appeal or otherwise collaterally attack any judgment of conviction within petitioner's plea agreement is without merit. The Second Circuit has held that:

> "[A] defendant may have a valid claim that the waiver of appellate rights is unenforceable . . . when [1] the waiver was not made knowingly, voluntarily, and competently, [2] when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, [3] when the government breached the plea agreement, or [4] when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus amounting to an abdication of judicial responsibility subject to mandamus."

United States v. Buissereth, 638 F.3d 114, 118 (2d Cir. 2011), cert. denied, 132 S. Ct. 210, 181 L. Ed. 2d 113 (quoting United States v. Gomez-Perez, 215 F.3d 315, 319 (2d Cir. 2000)); see also United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011) (holding that an appeal waiver is appropriately voided where there is "[a] violation of a fundamental right," e.g., where the sentence imposed was based upon unconstitutional factors, such as race, naturalized status or the ability to pay restitution, or where the sentencing court "fail[ed] to enunciate any rationale for the defendant's sentence"). Accordingly, petitioner's claim that his acceptance of the plea agreement was not

knowingly or voluntarily made because he was not afforded a second psychiatric evaluation to determine his competency to plead guilty survives the waiver of his right to appeal. See, e.g. King v. Cunningham, 442 F. Supp. 2d 171, 185 (S.D.N.Y. 2006) (finding the State's contention that the defendant forfeited his mental competency claim upon entry of a guilty plea to be "fundamentally flawed," since "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." (quoting Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)).

Nonetheless, since, for the reasons set forth below, I find that petitioner's guilty plea was knowingly and voluntarily made, the waiver of his right to appeal or otherwise collaterally challenge his amended judgment of conviction is valid, see Riggi, 649 F.3d at 147 (holding that a waiver of the right to appeal or otherwise challenge a conviction or sentence contained within a plea agreement is generally valid and enforceable so long as it was knowingly, voluntarily and competently made); United States v. Morgan, 386 F.3d 376, 382 (2d Cir. 2004); United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004), and precludes consideration of petitioner's claim that the Court erred in permitting Dr. Ryan to conduct his first psychiatric evaluation because he received grant money from the government which influenced his medical opinion[3]

---

[3] In any event, petitioner's unsupported claim is without merit. See, e.g. Romano v. United States, 460 F.2d 1198, 1199 (2d Cir. 1972) ("[T]he mere assertion that a witness might have had a motive to lie, when unsupported by any fact, does not entitle a petitioner to a hearing on the alleged use of perjurious testimony."); Encarnacion v. McGinnis, No. 01-cv-0586, 2008 WL 795000, at * 10 (N.D.N.Y. Mar. 24, 2008) ("Petitioner's unsupported allegation of perjury is insufficient as a matter of law."); Dinsio v. Superintendent, Nos. 9:03-cv-0780, 9:04-cv-0015, 2007 WL 4002684, at * 12 (N.D.N.Y. Nov. 15, 2007) ("Petitioner's unsupported allegations of perjury and attacks on [a witness's] credibility are insufficient to sustain a claim for habeas relief.")

C.  Voluntariness of Plea

Petitioner's claim that his guilty plea was not knowing and voluntary is without merit. "For [a] plea to be voluntary, it is axiomatic that the defendant must at least be competent to proceed. * * * [H]e must have an awareness of the true nature of the charge against him * * *; have a rational as well as factual understanding of the proceedings against him * * *; and have knowledge of the nature of the constitutional protections he will forego by entering his plea * * *." Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004) (alterations, quotations and citations omitted); see also Godinez v. Moran, 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) ("A criminal defendant may not * * * plead guilty unless he does so competently and intelligently." (quotations and citation omitted)); United States v. Rossillo, 853 F.2d 1062, 1064 (2d Cir. 1988) (holding that before accepting a guilty plea, the district judge must determine "whether the defendant understands the nature of the charge against him and whether he is aware of the consequences of his plea." (quotations and citations omitted)). The standard for competence to plead guilty is the same as the standard for competence to stand trial, i.e., "whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." Godinez, 509 U.S. at 396, 113 S. Ct. 2680 (quotations and citation omitted); see also United States v. Nichols, 56 F.3d 403, 410 (2d Cir. 1995). Moreover, the trial court "must satisfy itself that the waiver of [the defendant's] constitutional rights is knowing and voluntary." Godinez, 509 U.S. at 400, 113 S. Ct. 2680. Courts must "exercise the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Saddler v. United States, 531 F.2d 83, 85-6 (2d Cir. 1976) (quotations and citation omitted). "The judge must satisfy himself that the defendant has the mental capacity to make a

reasoned choice among the alternatives presented." Id. at 86 (quotations and citation omitted); see also Parke v. Raley, 506 U.S. 20, 29, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992) ("The standard [for determining whether a guilty plea was both knowing and voluntary] was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)).

Less than eight (8) months prior to petitioner's guilty plea, a psychiatrist found that petitioner "possess[ed] a rational and factual understanding of the proceedings against him, * * * ha[d] the capacity to assist legal counsel in his defense, and * * * [could] rationally make decisions regarding legal strategy" and, thus, was competent to stand trial. See, e.g. United States v. Quintieri, 306 F.3d 1217, 1233 (2d Cir. 2002) ("A district court also often orders and reviews psychiatric records when determining [competency] * * *.");United States v. Morrison, 153 F.3d 34, 46 (2d Cir. 1998) ("In determining competency, the court may consider medical opinion as well as its own observation of the defendant's conduct.") Although a second psychiatric evaluation was ordered but not conducted, both petitioner and his trial counsel were asked specific questions during the plea allocution to determine, *inter alia*, whether petitioner fully understood the proceedings and the nature of both the charge against him and the rights he was waiving. See, e.g. Nichols, 56 F.3d at 411 (holding that the district judge "was entitled to rely on his own observations and questioning of the defendant * * * in making his final finding of competency * * *.") "[S]tatements at a plea allocution carry a strong presumption of veracity * * *." United States v. Doe, 537 F.3d 204, 213 (2d Cir. 2008); see also Blackledge v. Allison, 431 U.S. 63, 73-4, 97 S.Ct. 1621, 52 L. Ed. 2d 136 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at * * * a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable

13

barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Gonzalez, 647 F.3d 41, 56 (2d Cir. 2011) ("[T]he court was required to fathom [the defendant's] subjective state of mind at the time he entered his plea of guilty. And it was required to explore that matter in light of the representations made by [the defendant] himself under oath in open court at the time of the plea and in light of all of the relevant circumstances surrounding it." (quotations and citation omitted)); United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) ("[T]he district court was entitled to rely upon the defendant's sworn statements, made in open court with the assistance of a translator, that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below 120 months, and had been made no promises except those contained in the plea agreement."); United States v. Maher, 108 F.3d 1513, 1521 (2d Cir. 1997) ("The district court is entitled to accept a defendant's statements under oath at a plea allocution as true.") Moreover, "since incompetency involves an inability to assist in the preparation of a defense or rationally to comprehend the nature of the proceedings, failure by trial counsel to indicate the presence of such difficulties provides substantial evidence of the defendant's competence." United States v. Vamos, 797 F.2d 1146, 1150 (2d Cir. 1986); see also Quintieri, 306 F.3d at 1233 (accord). Based upon petitioner's and his trial counsel's responses to my questions during the plea allocution, as well as petitioner's demeanor and behavior in the courtroom, see, e.g. Drope v. Missouri, 420 U.S. 162, 180, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975) ("[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence * * * are all relevant * * *."); Quintieri, 306 F.3d at 1233 ("The district court's own observations of the defendant's demeanor during the proceeding are relevant to the court's determination [of competency] * * *."), I was satisfied that petitioner was entering the

14

plea of guilty voluntarily and of his own free will and that there was a factual basis for the plea. Indeed, petitioner does not contend that he did not understand either the nature of the charge against him or that he was waiving his constitutional rights. Rather, he contends that since the second psychiatric evaluation was never conducted, "there was no way to be sure that [he] understood what a plea agreement was." Petitioner's speculative claim is belied by the record and is contrary to his express representations during the plea allocution. See, e.g. Blackledge, 431 U.S. at 74, 97 S. Ct. 1621 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.") Accordingly, petitioner's claim that his guilty plea was not knowingly and voluntarily made is denied. See, e.g. Oyague, 393 F.3d at 106 (rejecting claims that the defendant's guilty plea was not voluntary because they were "belied by the record and [were] contrary to [his] express representations during the plea); United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1098-99 (2d Cir. 1972) (upholding guilty plea where, *inter alia*, two (2) psychiatrists found the defendant mentally competent to understand the charge against him and to be capable of participating in the proceedings and making his defense; defense counsel testified that he considered the defendant to be competent and capable of conducting intelligent discussion of various aspects of his case; and the record of court proceedings revealed that the defendant testified coherently and comprehended the proceedings and the questions asked of him).

### D. Ineffective Assistance of Counsel Claim

Petitioner's ineffective assistance of counsel claim is also without merit. "Ineffective assistance of counsel during plea negotiations can invalidate a guilty plea * * * to the extent that the counsel's deficient performance undermines the voluntary and intelligent nature of defendant's

15

decision to plead guilty." United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005). In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, a petitioner must prove both: (1) that counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms;" and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); see also Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." Knowles v. Mirzayance, 556 U.S.111, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009) (quoting Strickland, 466 U.S. at 694).

### 1. Prejudice

"[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); see also Arteca, 411 F.3d at 320 ("To satisfy the second prong of Strickland in the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial.")

Petitioner cannot establish any prejudice resulting from his trial counsel's alleged ineffectiveness because, *inter alia*, it is pure speculation that a second psychiatric evaluation by a different psychiatrist would have found petitioner not competent to stand trial, particularly since the record does not support a finding that petitioner was unable to understand the proceedings and the charge against him or was unaware of the consequences of his guilty plea and his waiver of the right to appeal or otherwise challenge his conviction. Moreover, since the Court orally granted the

16

application of counsel appearing on behalf of petitioner during the July 2007 conference for a second psychiatric evaluation during court proceedings at which petitioner was present, he clearly knew that he had a right to a second psychiatric evaluation prior to pleading guilty, but proceeded to plead guilty absent such evaluation anyway. The only misinformation about the second psychiatric evaluation by trial counsel identified by petitioner concerns who was responsible for paying the cost of such evaluation. The record does not support a conclusion that had trial counsel informed petitioner that the government or Court would bear the cost of any second evaluation, as opposed to the Federal Defenders Office "hav[ing] to flip the bill for a second test," (Mot., at p. 1), it is reasonably probable that petitioner would have insisted on a second psychiatric evaluation to determine his competency and would have gone to trial instead of pleading guilty. See, e.g. Arteca, 411 F.3d at 321 (affirming dismissal of an ineffective assistance of counsel claim where the record did not support a conclusion that had the defendant known the correct Guidelines sentencing range earlier, it was reasonably probable that he would have proceeded to trial rather than plead guilty). Furthermore, in pleading guilty, petitioner avoided a potential sentence being imposed at the statutory maximum of ten (10) years, and, thus, he achieved a significant benefit by pleading guilty which he would have lost had he gone to trial. See, e.g. Boakye v. United States, No. 09 Civ. 8217, 2010 WL 1645055, at * 6 (S.D.N.Y. Apr. 22, 2010). Since petitioner has not established that he suffered any prejudice from the inaccurate information trial counsel provided regarding the entity responsible for paying the cost of a second psychiatric evaluation, his ineffective assistance of counsel claim is denied.

2. Reasonableness of Counsel's Performance

In any event, petitioner also cannot establish that it was unreasonable for trial counsel to fail to arrange for a second psychiatric evaluation prior to him pleading guilty, particularly since petitioner represented to the Court during both the plea allocution and his first sentencing that he was satisfied with trial counsel's representation during the proceedings.

III. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is denied in its entirety and the proceeding is dismissed. As petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(1); see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); Contino v. United States, 535 F.3d 124, 127 (2d Cir. 2008). Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253. The Clerk of the Court is directed to service notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* petitioner at his last known address. Fed. R. Civ. P. 5(b)(2)(C), and to close this case.

SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 7, 2013
Central Islip, New York